Thank you, Your Honor. Brian Miller for the appellants and cross-appeal appellees, and I'd like to reserve five minutes for rebuttal. All right. We respectfully submit to the Court that the appeal before you is about three things. Montana property law, the continuing violations of Wells Fargo, and statute of limitations questions. Procedurally, we have four tort claims and a declaratory judgment action claim that have been dismissed. The four tort claims were dismissed on a Rule 12c motion for judgment on the pleadings, which is why we have argued in our briefing that this Court should only confine its review to the four corners of the first amended complaint when it's considering whether our tort claims are properly dismissed. We understand there is a lot of information. There's kind of a voluminous record that has been set before this Court, but as we have said in our briefing, before the District Court, we asked, because we knew matters outside the pleadings had been submitted, and we, in our briefing, we asked repeatedly, if we're going to go to summary judgment, can we please follow the local rules? Can we please have a chance to brief that? And the District Court stuck with the pleadings, stuck with the 12c standard. We think that's very important because the first amended complaint in this case was filed after we had received somewhere in the order of 7,000 pages of documents from Wells Fargo, and we went through those very carefully to see if the allegations that we had in our original complaint held water. We found not only that they held water, but there's even more evidence there to support our position. In terms of this case being about Montana property law, we understand that the kind of issues that this panel is dealing with right now get decided different ways depending on different jurisdictions. We have directed the Court to three cases which we think provide some pretty clear guidance, and again, as we argued in our briefing, any time there's a question of State property law, the State's interest and the State's interpretation is sort of at its zenith, and the Federal Courts are almost at some of their lower points because, as has been noted many times in Federal Court decisions, State property rights are not created under any Federal source. Counsel, here we are in Federal Court. Yes. So I wanted to ask you, for me, the pivotal issue in this case is whether or not the claims survive the statute of limitations. So could you please address the statute of limitations issue? Absolutely, Your Honor. Would you agree that these claims are torts claims? Yes, except for the declaratory judgment action, which is a little bit different. Okay. So I agree. So for the declaratory relief action, what statute of limitations would you say governs the declaratory relief action? Well, first off, we agree that declaratory judgment actions, the Courts have to kind of look behind and see what kind of claim they're dealing with. The District Court thought it was a negotiable instrument, but our complaint didn't say negotiable instrument. Well, you look to the character of the complaint rather than the name. It didn't say negotiable instrument, but why wouldn't it be negotiable instrument? Well, there's an important reason. That's because it's the deed of trust that controls in this case. But the deed of trust is not being interpreted at all, is it? In our view, it is, Your Honor. Are you essentially alleging that the wrong defendant is trying to foreclose that they don't really rightfully hold the paper? Exactly. Well, why isn't that a conversion claim? Well, the reason why it's not a conversion claim is because in order to resolve that question, the deed of trust needs to be interpreted, not the negotiable instrument. Because our whole theory of that part of the case arises under the Montana Small Tract Financing Act, and that deed is governed and specifically incorporates the provisions there. So that's our position, is that this is essentially about the deed of trust, interpreting the matter or not Wells Fargo qualifies as a beneficiary. And we believe there's a lot of evidence in the record. What in the deed of trust would disqualify Wells Fargo as a beneficiary? Well, that would require us going back into the facts of the case. On the face of the deed of trust, what that does is refer the court back to the Montana Small Tract Financing Act because it's replete with references to that. And since this is a piece of property that's under 40 acres and is governed by non-judicial foreclosure proceedings, then all the provisions of Title 71, Chapter 1 in the Montana Code annotated control the interpretation of who is a beneficiary. And that's really what the case comes down to, is Wells Fargo a beneficiary? But does it control how the underlying securities can be transferred? Yes. Yes, because it defines who is a beneficiary and under what circumstances. And to answer that question, it's going to require the resolution of questions of fact. Okay. So setting aside the declaratory relief action, the claim for negligence, negligent misrepresentation, fraud, and the Consumer Protection Act claims, or torts, would you agree with that? And would you agree that those are barred by the statute of limitations? I would not. Why not? Because this gets to a distinction between what would be called a continuing tort theory and a continuing violations theory. And there are numerous acts alleged in the First Amendment complaint about tortious conduct occurring after May 12th, 2012, which would cover negligence and negligent misrepresentation. And May 12th, 2013, which would cover constructive fraud and consumer protection violations. There were several foreclosure sales noticed within the two and three year time period. There were, counsel. But what authority do you have that the continuing, aren't you alleging the continuing violation theory? Yes, Your Honor. What authority do you have that says that that's applicable here? We've cited them in our brief.  What's the strongest case? Well, the strongest case here would be Yarbrough v. Montana Federal Credit Union. And the reason why that would be the strongest case is because that's a Montana case. And if I could, that is cited, I know it's cited in our brief. It's cited on page 28 of our response and reply brief. Yarbrough v. Missoula Federal Credit Union? Yes, Your Honor. Okay. That's a Montana case, right? It is, Your Honor. I thought you said it was a federal case. No, Your Honor. That's a Montana case. Okay. We cited the federal cases such as Ward v. Calk and its progeny. There were a number of them cited in our brief. I can get to them real quickly. Oh, that's okay. What is your strongest case? You said that's your strongest case. That's a good one. Another one that's really strong is Bassam v. Bank of America, which is 642 F. Supp. 2nd, 1060. I'm sorry, 2015 U.S. District Lexus, 88880. It's in our brief. But that's also a very strong one because that's a loan servicing case. In that case, the plaintiff alleged that Bank of America began engaging in wrongful, tortuous conduct at a point in time in the past and engaged in a series of wrongful acts that continued right up to the filing of the complaint. The district court just said, well, the things that happened before the statute of limitations, you can't bring a claim on those. The things that happened within the statute of limitations, you can. Could we go back to the Yarbrough case because you said that's your strongest case. Could you point me to the specific language in that case that you rely upon for your continuing violation theory? I don't know if I can point to the specific language, but I can tell the court why I think that's a strong case. Well, if you say that's your strongest case, I'm looking for a language in there that supports the concept of continuing violation. It just basically talks about fraudulent concealment, tolling the statute of limitations. Well, the case talks about repeated acts of conversion. And what happened in that case was that a woman named – I know what the case is about. That's why I was asking you to point me to a specific language that talks about a continuing violation theory. But I don't think it's there. Well, I don't have the citation of that. But there's the part in the case where the court talks about how McLean had repeatedly wrote bad checks over and over again. And in the case they said that each time an act of conversion occurs, accrual of a separate action happens. Right. But as for the statute of limitations, it says, the applicable statute of limitation begins to run once the plaintiff knew or should have known that a cause of action exists. And that's generally – The discovery rule. Yes. That part of the case does not apply here because we are only talking about actions that occurred within two and three years of the filing of the complaint. The point – Right, right. It doesn't help you. That's Judge Rollinson's point. I understand, Your Honor, yes. Okay. But what I – I'm sorry if I didn't handle that the right way. The reason why I think that case is a strong case is because it shows every time an action occurs, an act of conversion in that case, a separate cause accrues. Now in – I don't see that in that case. Okay. I don't see that analysis in that case. That's why I was asking you to point me to it. That case is about a series of freestanding claims and they discover a new transaction and a new transaction and a new transaction. That's not what you've got here. What you've got is a very long saga all stemming from one not, right, that happened and at some point Judge Christensen found at some point you all knew about it. Yes. Okay, so that's where he starts the clock, and his ruling is that it's too late. Yes. That's his ruling. That's his ruling, yes. I don't see this as a continuing violation problem. Fractually, and then I don't see support for the notion that Montana has recognized the continuing violation theory. So what are you relying on for your tort claims? Yes. So, again, the – Montana just doesn't have a lot of case law in this area. I mean it just – sometimes in Montana we find through smaller jurisdiction we haven't probed all the grounds that other courts have. Well, I understand that because I'm from Alaska. Yes. I understand that, but are you asking us as a federal court to sort of superimpose that requirement? That would be unusual. We're looking at Montana law. I would not ask that, Your Honor, no. Okay, so where do we get this? Where do we glean this theory that you want us to rely on? Sure. Please. Well, understanding the concerns of the court better, I think a better case to look at would be Bossom v. Bank of America. And I apologize if I – if my reading on that case is not the same as the court. Okay, no apology. We're just trying to figure out. So now you want us to look at which one? Bossom v. Bank of America. And that's cited in our brief. Central District of California. Yes, Your Honor. So you think that's going to elucidate Montana law? Well, if I may, Your Honor, if there is a – if the question here is how is the Montana Supreme Court going to interpret this case and if this court is not certain, I think the more prudent course would be to send that certified question over to them. I mean, the Yarborough case is the closest case I could find that really talked about an accrual of an act, accruing every time. But I understand the court is saying that that's not helpful to the court, and I understand that. And another case that's cited is Christian v. – in the case, Arco, which talks about the continuing tort theory. And in the Christian case, it does mention a North Carolina case, which is called Manzik, which talks about the continuing violations theory. But there is just not a Montana Supreme Court that directly hits this issue. I will agree with that. Your Honor, if there's no further questions, I would like to reserve a few minutes. All right. Thank you, counsel. Thank you very much. Good morning, Justices. My name is Ken Lay. I represent Wells Fargo and HSBC. Regarding the continuing tort doctrine, I'd like to briefly discuss one of the cases that was cited in our briefs but not analyzed in a lot of detail, and that is Gomez v. State. That's a Montana Supreme Court case, and as we've discussed, federal courts must abide by state tolling rules and state policy with respect to tolling statute of limitations. What really matters here is what the Montana law says and what the Montana Supreme Court would say, and I think Gomez is a critical case because it's very analogous to this case, and it indicates how the Montana Supreme Court would be likely to handle this kind of a circumstance. What would they do? What's your best guess? They would not apply the continuing tort doctrine. But what would they do? What would they do? That's what I'm asking. They would find that the discovery doctrine applies. That's what they did in the Gomez case. It was a situation where a gentleman was. Is that because factually all of the opposing parties' claims arise from one source, one time period? Yes, they do arise from an initial time period. They all stem directly from that, and I think that- It's one transaction as opposed to a series of transactions is what I'm trying to get at. I don't- Yes, I believe that. The parties' positions, I think, were fixed very early in the case where Wells Fargo was saying, we service the loan on behalf of HSBC, and we have the right to foreclose, and certainly in 2011, the plaintiffs had taken a position directly opposite to that. They were sending a cease and desist letter saying, you don't have the right to foreclose. Aren't the misrepresentation claims based upon a series of- again, these are allegations- a series of allegations that Wells Fargo broke a promise to modify the loan? You know, on that point, I would- no, they're not, because the allegations with respect to loan modifications were dismissed with prejudice by the parties earlier in the case. They're not anymore. They're not anymore. Thank you. Yeah, those claims arising from, you know, the allegation that Wells Fargo put them or caused them to be in default or refused to give them a loan modification are no longer in the case. It's strictly a question of- I stand corrected. Thank you. Okay. Counsel, could you please address opposing counsel's representations regarding the declaratory relief action as being predicated on an interpretation of the deed of trust? I don't, frankly, understand a lot of what his argument was with respect to that. I think the declaratory relief judgment here clearly has to do with conversion of the right to payment in the note and the beneficial interest in the deed of trust. His argument, I think, pivots on his position that it's necessary to interpret the deed of trust. I don't know what language in the deed of trust would need to be interpreted to make a determination as to the nature. If we're looking at what is the nature of the underlying cause of action, I think it's clearly conversion, whether we're talking about conversion of the right to payment under the note or conversion of beneficial interests, including the right to enforce and foreclose. I think that my understanding, please correct me if I'm wrong, my understanding is that the district court reasoned that this was a claim that sounded in conversion because plaintiffs are alleging that Wells Fargo really isn't rightly the holder of the note. That's correct. That is my understanding of the plaintiff's claims, that they are saying Wells Fargo does not have the right to service and HSBC does not own the beneficial rights in the note. Could you address the standing issues in the case? Yes, and I'm happy to do that. I don't believe that there are, I don't believe that the plaintiffs have standing. This is an alternative basis for affirming the district court if we don't resolve this. Yeah, I believe that the district court had determined that they did have standing. He determined that based on the Pilgrim v. Greenpoint mortgage case. The Montana Supreme Court in Pilgrim actually did not discuss standing at all, and so I think the district court's reliance on that was misplaced. The Montana District Court, U.S. District Court in Montana, has consistently found that homeowners do not have the right to challenge, they don't have standing to challenge the assignment of a deed of trust. And most recently, just in this past January, in the case of Armitage v. Caliber Home Loans, that's a case. I apologize, I did not, I didn't discover the case until this Friday. It was decided after the briefs were submitted, but I have submitted a supplementation. Do you think that that, we're familiar with the case. Do you think that, because that's of course interpreting Montana law, isn't it? Yes. Is it Trump-Ruby Valley? Ruby Valley commented on the Pilgrim case. Right, and it says, you know, my note indicates here, it's a footnote, it's a footnote, but it says that a property owner facing foreclosure may be able to challenge the chain of assignments purportedly giving the loan servicer the right to foreclose. I would point to the fact that that has to do with, well, for one thing it says may, and I think it may be dicta. Well, it's dicta from the State Supreme Court, so it's a pretty heavy wink, a pretty clear suggestion to me. And here, let me just tell you what my problem is with your standing argument. The first time one reads through the fact pattern in the case, it's somewhat striking, because there's folks who've been in this home for, I think, ten years. Yes. Without making a payment on the house, basically. And on the one hand, one might think, well, why do they have standing? What difference does it make who's foreclosing? Because, surely, they have this more fundamental problem. But I think that the problem with your standing argument is that it really assumes, right at the get-go, before there's been any discovery or anything else, we're just looking at the four corners, basically, of the complaint. And I think what you're assuming is that people in opposing parties' situation necessarily wouldn't be able to pay. In this case, they've shown no indication of an ability to pay. But, of course, we have to be concerned about precedent. And it strikes me it's not hard to imagine a case where a foreclosure action could be initiated, you know, accidentally, in error, get the wrong property, just any kind of scenario you might want to suspect where homeowners can cure and have the right to come in and cure. Surely, they have the ability to, they have standing in an eviction action, a foreclosure action to come forward and at least get in the courthouse door. Potentially. I don't think that's the situation we're dealing with here. It's not the situation we're dealing with here. Again, that's why I kind of tried, and I don't think there's any indication of that here. Don't mistake me. But you're asking us to say these people don't have standing. And we have to be concerned about the precedent going forward. And it's just not hard to imagine another situation where people might be able to cure. My point is just that I think, and this is actually the question, I think your standing argument is really pivoting on an assumption that they necessarily couldn't cure, they wouldn't have any defense. I would direct the court to a Montana bankruptcy court decision in Ray Hoffman that was cited in the briefs. Okay. And what that case said, if you'll pardon me while I turn to my notes. I'll do the same. If it was cited in the briefs, I read it, but let me just go back to it. Hoffman? In Ray Hoffman. Yep. And, you know, that's cited to Montana, code annotated 71110, which holds that the assignment of the debt carries with its security. And what the court remarked in that case was that the maker of the note should be indifferent to who owns or has interest in it so long as it does not affect their ability to pay. And this is not a case where the knights are saying that somebody else is who they should be paying. And I'm not speaking to the fact pattern here. What I'm speaking of is that you're asking for a very broad ruling and you're asking us to make new law in a case where I think it could be maybe not a problem here but could be an awfully sticky wicket were the facts somewhat different. Yeah. You have a very strong argument for other reasons on the statute of limitations. I understand that. This is an alternative. I'm not trying to waste your time, but it just strikes me that you have an awfully strong argument on the statute of limitations. And I agree. I don't think the standing issue needs to be reached because of the statute of limitations. Counsel, for the record, could you complete the citation for the case that you were saying that was just decided and that you wanted to rely on? What was the complete citation? Yes, that was in Ray Hoffman, 488, bankruptcy reporter 157. That's a 2013 case from that. No, no, no, no. Before that, we were having a discussion, you were having a discussion with Judge Christian, and you said there was a case that was just decided last Friday or something you were saying, and you were going to give that citation, but you didn't complete it. I think it was Armitage versus Caliber Home Loans. The Westlaw site for that is 2018 Westlaw 502750. All right. Thank you. I just wanted it in the record. Thank you, Your Honor. If I could, I wanted to go back to the Gomez case just to briefly show how that is analogous to this case. That was a case where a gentleman alleged chemical exposure at the workplace. He started his job in 1988. He went to see a doctor based on chemical exposure in 1989. He filed a worker's comp claim in 1992 arising from this chemical exposure, but he stayed on the job and continued to work until December of 1992. And there's no dispute that he discovered that he was in an injurious situation more than three years before he brought a suit, but he tried to argue around the three-year tort statute by citing the kind of trespass and nuisance cases that apply the continuing tort doctrine under Montana law. And his claim was that he was exposed to these chemicals until the last day that he was on the job. So the last date, according to his argument, the last date that he was in the harmful circumstances was the date that the statute would begin to run.  They said we're not going to apply continuing tort doctrine to this type of a case. They said a straight discovery doctrine analysis would apply because, you know, once you've discovered the harm and that you're in an injurious circumstance, the statute needs to run because otherwise plaintiffs can sleep on their rights, remain in a harmful situation, and delay the statute of limitations indefinitely. And I think that's what the Knights have done here. They knew that Wells Fargo was servicing their loan on behalf of HSBC. They openly disputed that, and they did nothing, and they remained in what they contend was an injurious situation for years. And I think the Gomez case is very on point. The court recognized that, first of all, continuing tort theory doesn't work in all cases. Montana case law on continuing tort theory really does deal with trespass and nuisance situations. The court in Christian v. Atlantic Ridgefield has recognized that potentially it could apply to other cases, but it also recognizes in that decision that there are many types of cases that that theory just won't work. The Gomez case also stresses that Montana's tolling policy doesn't like situations where statutes will be tolled indefinitely, and that's kind of what we have here. To the extent that that case law from trespass and nuisance cases can be borrowed and applied to this situation, the analysis and the district court's analysis was one of whether it's a permanent or a temporary injury. And under Montana law, that turns on a question of reasonable abatability. If a situation is reasonably abatable, that's a temporary tort, and the continuing tort doctrine would apply. So what does that mean? If you look at the Burley case, Burley v. Burlington Northern, what the Montana Supreme Court said was whether it would be reasonably abatable is determined by whether it would be reasonable for the alleged tortfeasor to abate the harm, taking into account all the factors, and you go through a case-specific kind of analysis. It would not be reasonable in this situation to expect Wells Fargo or HSBC to abate the allegedly harmful conduct because to abate that conduct, they would have to basically accede to the plaintiff's position and surrender all interest in the property, surrender any right to foreclose. That's the abatement that the plaintiffs are looking for. It's not reasonable to expect Wells Fargo to do that. They have a duty to service the loan under the servicing agreement with HSBC, and HSBC has a duty as trustee of the mortgage loan trust towards the investors in that trust to not simply abandon its interest in the collateral. So this isn't a case where it's reasonable to ask for abatement. Thank you, counsel. Thank you. Rebuttal. So there's not – there's several acts in this case. That's why the continuing violations doctrine applies. There's the one act back in April 4th, 2008, where they executed an assignment which is invalid, but then there are several discrete acts of wrongdoing which are separate. For instance, going into bankruptcy court in 2014 and asserting a proof of claim for over $1 million. That's completely different from what they did in 2008, initiating foreclosure sales. Aren't all of those premised on Wells Fargo asserting expressly or impliedly that it's the proper holder of the paper? Absolutely, but they're discrete acts. There's been 15 foreclosure sales noticed on this property. So that's why I think it's different. Qualitatively different than a series of transactions like a series of bounced checks or a series – right? It's qualitatively different. They seem to all stem – I just want to give you a chance to respond. Sure. They seem to all stem from what the district court found was Wells Fargo's assertion of we hold this paper and we're foreclosing. Yes, that's true, but they are separate acts. They're voluntary. They're made, and they change in character because after Wells Fargo interacts with the Attorney General's office and, in our view, misleads them, they then go on into bankruptcy court and potentially mislead the bankruptcy court. That's completely different than filing a piece of paper somewhere. Are the misrepresentation claims still afloat? Absolutely, Your Honor, because those are within two and three years. If the court determines those are discrete acts, and something that I apologize I didn't – Isn't the misrepresentation – forgive me for interrupting, but isn't the misrepresentation in each instance the same representation, which is we hold this paper? But it's different. I mean, it's different because after they have interacted with the Attorney General's office and they've represented that they're going to do this fact-finding and they know at that point they're on notice that they're supposed to investigate these issues, they make a conscious decision that's reviewed by their counsel to then take this position in bankruptcy court. And that's completely – that's our view, Your Honor, that it's different. Okay. I appreciate that. It just seems to me that what you're saying is basically they're saying something that's not true, and they're repeating it in a bunch of different places. And I'm just not sure why that's a continuing violation theory. The reason why it's a continuing violation theory is because the character of each action is discrete. Noticing a foreclosure sale, canceling a foreclosure sale. That's our view on it. Okay. And I would just like to point to one other thing because I know I'm running out of time. Please look at the Rustad case by the same district court that we've cited in our brief. It is on pages 12 and 26 of our response brief. The same district court in that case said until Bank of America completed a foreclosure, injury wasn't permanent. Injury was not. Was not permanent. And so if the same district court held it in that position, isn't this case still alive? And there hasn't been a completed foreclosure sale either. So, again, thank you very much for your time. Thank you, counsel. Thank you to both counsel for your helpful arguments in this case. The case just argued is submitted for decision by the court. That completes our calendar for the morning, and we are in recess until 9 a.m. tomorrow morning.
judges: Rawlinson, Christen, Freudenthal